# Applegren's Estate.

*Decedents' estates—Claim for nursing—Evidence.*

A claim for nursing against a decedent's estate will not be allowed where it appears that the decedent had boarded with the claimant for about fifteen years, paying a weekly sum therefor, but being regarded practically as a member of the family, that there was nothing to show

that the claimant's services for nursing were not voluntarily performed, and there was no evidence offered to support a contract other than loose expressions of gratitude and appreciation by the decedent, and the hope that he might live to see the day when claimant would be compensated.

Argued Dec. 4, 1914. Appeal, No. 196, Oct. T., 1914, by Mary C. Dunn, from decree of O. C. Phila. Co., Jan. T., 1914, No. 101, dismissing exceptions to adjudication in Estate of Oscar E. Applegren. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Exceptions to adjudication.

DALLETT, P. J., filed the following adjudication:

The decedent died on October 20, 1912, intestate, leaving as appears from the petition for distribution and appearance slip of counsel hereto annexed, as the persons entitled to his estate, under the intestate laws of Pennsylvania, Kristina Sofia Lundberg, a sister, Charles A. Seaton, a nephew, and Vendla S. Thorsell, a niece (the children of a deceased sister), and Maria Charlotta Rathgen, a niece, and Charles G. Carlson, a nephew (the children of a deceased brother).

Mr. Raken, on behalf of Mary C. Dunn, presented a claim for $750 with interest for nursing the decedent from March 11, 1911, to September 4, 1912—seventy-five weeks at $10.00 per week, and testimony with regard thereto was taken.

It appears therefrom that the decedent and his wife some fifteen or sixteen years before his death went to board with the claimant. His wife died about a year and a half later. Subsequent to her death the decedent paid the claimant $5.00 per week board and was practically accepted as a member of the family. He died on October 20, 1912, in the Jewish Hospital, where he had been for some five weeks. He was then about fifty-eight years of age. Perhaps four years before his death his health failed. He suffered in addition to attacks

of grippe or influenza, with stomach trouble, his death probably being caused by cancer of the stomach.

While able to go out during most of the period covered by the claim for services, much of his time was spent in bed, and the claimant gave him such care as was necessary, moving him from one floor to another in order that she could attend to his needs, providing delicacies for him, flaxseed tea, mustard plasters, ice bags, etc., and administering his medicines.

That he appreciated these services appears from his declaration to the various witnesses—to the doctor, for instance, when he advised a nurse, he declared that "Mrs. Dunn was all he needed"—Mrs. Dunn was "very good to him . . . was like a mother to him."

To David Marshall, a fellow boarder, that "Mrs. Dunn treated him very well, he did not know what to do if he did not have Mrs. Dunn to look after him," that he "hoped he would live to see the day he could remunerate her for all the nursing she had done for him during his illness."

To Victor W. Embarth, an acquaintance for from thirty-eight to forty years, that there was nothing the witness could do for him—that "Mrs. Dunn took good care of him."

To John Anderson, who had boarded with Mrs. Dunn and always visited the decedent there, that "Mrs. Dunn had done so much for him, he could not expect anybody else to do as much."

To Henry P. Alleman, claimant's son-in-law, "Well, there has been a great deal done for me by Mrs. Dunn, I shall remember her, she will be remunerated for it . . . . nobody could have done as much, not even my own mother, than she has done for me"—that, "he wanted Mrs. Dunn looked after, and when he got well enough he would settle with her."

To Mabel Dannenhower, a neighbor, that "Mrs. Dunn got up at three o'clock in the morning, making flaxseed tea and mustard plasters, how she waited on

him, and he hoped he would get better so he could pay Mrs. Dunn for her service and attention."

To Mrs. Alleman, a daughter of the claimant, that "he did not know what he would do if he did not have a home like ours."

And to Agnes Dunn, another daughter, "he would speak of the attention and care mother had given him, both him and his wife, and how he intended to pay mother when he got well," and when he was in the hospital, "when I get better, when I get home, I will certainly pay Mrs. Dunn for all her kindness and attention to me and my wife."

It also appears that the claimant prior to her marriage many years ago had been a nurse.

In opposition to the claim, Judge Finletter, on behalf of the distributees, offered in evidence Dr. Kevin's bill, showing twelve charges for office visits between May 4 and August 27, 1913 (but probably meaning 1912), and also checks showing that between March 14, 1912, and July 3, 1912, $400 had been drawn from the decedent's account in the Equitable Trust Company. His estate at the date of his death consisted of a deposit with the Continental-Equitable Title & Trust Company of $2,175.60, as well as other assets of the value of $36.30.

It is to be noticed that it does not appear that in the declarations made to the various witnesses, as to payment to Mrs. Dunn for any services for nursing, were made in her presence, or conveyed to her. And it is a fact that the decedent had been a boarder in her house for perhaps fifteen years, during which time he was practically a member of the family. This long-continued relationship was perhaps the reason for the claimant's attentions—such, in any event, would be a reasonable view, and he had at all times money to pay for added attentions had he so desired, contemplated, or contracted.

On the other hand, the decedent's declarations when

the doctor suggested that a nurse was necessary, that he was satisfied with the services being performed by the claimant, might possibly be interpreted as a request that she continue the services. It is not clear, however, when this suggestion was made, or whether the decedent was satisfied with the services because of their character, or because he looked upon them as being free. And it nowhere affirmatively appears that the claimant ever expected any payment.

Such consolation of the decedent received in the declining years of his life, he did, however, receive from the claimant and her family—the evidence discloses none supplied by his relatives.

While, therefore, the auditing judge would more willingly have approved the settlement of $150 suggested by counsel for the estate, as doing, perhaps, more exact justice, under the circumstances, he must, in view of the authorities (Moore's Est., 12 Pa. Superior Ct. 599; Piersol's Est., 27 Pa. Superior Ct. 204, and Wise v. Martin, 232 Pa. 159), reject the claim.

On exceptions to adjudication, GEST, J., filed the following opinion:

This is a claim for nursing and other like services rendered to the decedent by the mistress of the house where he had boarded for about fifteen years and where he was regarded practically as a member of the family. While the claimant did much for the comfort of the decedent during the later years of his life, there is nothing to show that her services were not voluntarily performed, and all the cases hold that a claim of this kind must be supported by clear evidence of a contract or the facts from which a contract must be necessarily inferred. The testimony here is unfortunately of a character which is always held insufficient, loose expressions of gratitude and appreciation and the hope that he might live to see the day when she would be compensated and the like: Wise v. Martin, 232 Pa. 159.

294     APPLEGREN'S ESTATE.

Opinion of Court below—Opinion of the Court.   [59 Pa. Superior Ct.

The facts are carefully reviewed by the auditing judge in his adjudication and a re-examination of the testimony discloses nothing that would enable us to sustain the exceptions, and even though we were of the opinion that the services were rendered on a contract, quantum meruit, there is not sufficient testimony on which could be based an award of a definite sum.

The decedent, although he may have been supposed to be practically without means, was nevertheless possessed of ample cash funds with which to defray all other obligations and it is significant that the claimant continued to act as she did at intervals for two and a half years, which period includes the seventy-five weeks for which she claims compensation without asking to be paid or making any attempt to put her services on a different basis: Piersol's Est., 27 Pa. Superior Ct. 204. Despite the earnest argument of counsel for the exceptions, we are constrained to dismiss them.

*Error assigned* was in dismissing exceptions to adjudication.

*Thomas B. Hall*, with him *Simon C. Raken*, for appellant.

*T. D. Finletter*, with him *F. Raymond Wadlinger*, for appellee.

Per Curiam, February 24, 1915:

Notwithstanding the earnest and able argument of appellant's counsel, our examination of the evidence and consideration of the legal principles applicable thereto lead us to the conclusion that the court did not err in rejecting the appellant's claim. In our judgment this action is fully vindicated by the opinion of the auditing judge and the opinion of the court dismissing the exceptions to his adjudication. We deem it unnecessary to add anything to what they have said.

The assignments of error are overruled and the decree dismissing the appellant's exceptions to the adjudication is affirmed, the costs of this appeal to be paid by the appellant.